ARTHUR N. PIERSON, trading, &c.,

v.

THE BOROUGH OF HADDONFIELD et al.

WILLITS COAL AND LUMBER COMPANY

v.

THE BOROUGH OF HADDONFIELD et al.

[Filed February 23d, 1904.]

1. Any person who furnishes labor or material toward the performance of any contract for a public improvement in a municipality of this state, is entitled to have the benefit of the lien provided by the statute of March 30th, 1892 (Gen. Stat. p. 2078), to secure the payment of his claim.

Pierson *v.* Haddonfield.

2. The lien attaches from the time of filing the notice with the proper officer of the municipality, whether the whole work be then completed by the contractor or be abandoned by him.

3. It becomes, under section 5 of the statute, a charge not only on what is due to the contractor at the time the lien notice is filed, but also upon what may thereafter come to be due to him under the contract.

4. The statute is a public act. The municipality, the contractor and his surety, enter upon the transaction with full notice that persons who may do work or supply material to the contractor for the public improvement about to be constructed, will have the payment of their claims therefor secured by observing the statutory requirements. The right of the surety to be subrogated to the remedies against his principal (the contractor) which the other party to the contract may hold, is subject to the superior rights of the statutory lien claimants.

5. Where a lien has attached under a statutory notice to moneys earned by the contractor before he abandoned the work, which moneys are either due or to grow due to him, it will not be divested by subrogating the surety of the contractor to a right which the municipality might have had, if by its engineer it had completed the abandoned work, when in fact it did not so complete it.

On bill, answers and proofs.

The bill of complaint in the first of these cases was filed on July 14th, 1902, by Arthur N. Pierson, a lien claimant under the statute of 1892 (*Gen. Stat. p. 2078*), and makes defendants the borough of Haddonfield (a municipality of this state), which had contracted for the construction of a system of sewer and sewer disposal, and also John Quinlan, the contractor for the work and materials; the City Trust and Safe Deposit and Surety Company of Philadelphia, surety for Quinlan's performance of the contract, and other parties who assert rights as lien claimants against the portion of the contract price remaining in the hands of the borough of Haddonfield.

For convenience of reference, the defendant "The City Trust and Safe Deposit and Surety Company of Philadelphia," will hereinafter be referred to as the "City Trust Company."

The bill sets forth a copy of the contract with Quinlan, and of the bill of items of the goods furnished to him by the complainants, together with the credits for payments made thereon, and of the notice served upon the borough of Haddonfield to

retain for the complainant Pierson the balance due him, which is alleged to be $3,191.58.

It alleges that Quinlan began to work on the contract shortly after September, 1901, and continued to work thereunder until the month of April, 1902, at which time there was due to him under the contract the sum of $5,825, which sum, the bill alleges, is still owing by the borough of Haddonfield to Quinlan, and that it is subject to the lien of the complainant; that Quinlan is indebted to the complainant in the sum of $3,191.58 for material furnished to him in the execution of the contract; that on the 17th day of April, 1902, pursuant to a statute of this state passed to secure the payment to laborers, traders, &c., furnishing materials, &c., towards the performance of any public improvement, approved March 30th, 1902 (*Gen. Stat. p. 2078*), the complainant filed the proper statutory notice with the borough, claiming a lien upon the moneys remaining in its control. The complainant charges that the City Trust Company claims to be entitled to the moneys in question, and the complainants insist that if it has any lien thereon it is subject to the complainant's rights therein.

The bill also sets forth that the Willits Coal and Lumber Company filed, on April 23d, 1902, a notice of lien for materials furnished to the amount of $881.16; that the City Line Lumber Company filed, on the 19th of April, 1902, a like notice, for materials to the amount of $75.78; that Albert Speth filed, on the 29th of April, 1902, a like notice for labor done to the amount of $14.76; that on June 24th, 1902, James C. Dobbs filed a like notice for material furnished to the amount of $53.60; that H. Fred. Lauer, on the 14th of July, 1902, filed a like notice for material furnished to the amount of $30.

The bill prays a decree that its claim is a valid lien upon the funds in the hands of the borough of Haddonfield, precedent to all other claims except that of Albert Speth, and that the borough of Haddonfield may be decreed to pay out of the funds due or to grow due on the contract the amount claimed by the complainants, and for further and other relief, &c.

The borough of Haddonfield, by its answer, alleges that

Quinlan, in the month of April, 1902, having at that time been paid all the money then due him under the terms of his contract, abandoned his work thereunder, and left the borough. That thereupon the City Trust Company (which was the surety to the borough for the faithful performance of Quinlan's contract) began the completion of the contract after its abandonment by Quinlan. The borough admits that it holds the moneys falling due on the contract after the default of Quinlan, and stands ready to make such payment of the same to such person or persons as the court may in this cause deem to be thereto entitled.

The City Trust Company answers, admitting that Quinlan entered upon the performance of the contract and continued to perform it until the month of April, 1902, and denies that the sum of $5,825 was then due Quinlan from the borough.

It alleges that Quinlan abandoned the work before the contract was completed, and that thereunder whatever moneys remained due on the work done or to be done were held by the borough of Haddonfield, to be first applied for the completing of the contract, leaving to the credit of Quinlan only such balance (if in fact any there were) as might remain after meeting all costs, charges and expenses incurred in completing the portion of the contract left unperformed by Quinlan.

The City Trust Company further alleges that on the 9th of September, 1901, it executed a bond for the suretyship in the sum of $16,000, to the borough of Haddonfield, for the faithful performance by Quinlan of the said contract, and upon the abandonment of the contract by Quinlan the City Trust Company did, with the consent and approval of the borough of Haddonfield, undertake to prosecute the work of completing the contract which Quinlan had abandoned, and is presently engaged in completing the work required by the contract to be done which Quinlan had left undone.

The defendant the City Trust Company insists that, as surety for Quinlan to the borough of Haddonfield, it is entitled to be subrogated to all the moneys in the hands of the borough of Haddonfield, and that the defaulting contractor, Quinlan, and

the complainant and those creditors of Quinlan who claim liens against the contract price for materials furnished or work done for Quinlan before he abandoned the contract, are entitled only to such balance of the contract price as may remain after the contract work has been faithfully completed and paid for by applying thereto the portion of the contract price earned by Quinlan before he abandoned the work; that the right of the defendant the City Trust Company, as surety for Quinlan, to have the contract price applied to the completion of the work is superior to any right or privilege of the complainant or other lien claimants upon the moneys due Quinlan.

The defendant further claims that a portion of the pipe furnished by the complainant during the prosecution of the work by the defendant the City Trust Company was unfit for use; that the amount due therefor cannot be ascertained until the completion of the work; that the defendant the Willits Coal and Lumber Company removed material from the work after it had delivered the same.

The City Trust Company also denies that any of the statutory lien claimants have a valid claim to the funds remaining in the hands of the borough, and insists that the whole of that fund should be applied to satisfy the moneys expended by the City Trust Company as surety in the completion of the work.

The defendants Albert Speth and the City Line Lumber Company answer, setting up their several rights under the statutory notice served upon the borough officers, insisting that the complainant Pierson did not serve a lawful notice of his claim and that he has no lien on the fund, and as to the City Trust Company, insisting that its claim, if any it has, is subject to the liens of the said defendants.

The Willits Coal and Lumber Company also filed its bill of complaint in this court on July 18th, 1902, against the borough of Haddonfield for the payment of the fund. The bill is of substantially the same character as that above set forth. Answers to the same effect as those above recited have been filed thereto by the City Trust Company and other defendant litigants. The same counsel appear in both causes.

At the hearing it was agreed, by stipulation, that both of said causes should be tried together. Under the pleadings and the above stipulation the two causes have come to a hearing at the same time.

*Mr. William D. Lippincott* and *Mr. Thomas E. French,* for the complainants.

*Mr. David O. Watkins* (with whom was *Mr. Lincoln L. Eyre,* of the Philadelphia bar), for the City Trust and Safe Deposit and Surety Company, defendant.

*Mr. William T. Boyle* and *Mr. Henry S. Scovel,* for the borough of Haddonfield, defendant.

*Mr. Francis D. Weaver,* for the City Line Lumber Company, defendant.

GREY, V. C.

The bill in this case is filed under the Mechanics' Lien statute of this state "to secure the payment of laborers and other persons who furnish work and materials for public improvements in municipalities of this state," approved March 30th, 1892. *Gen Stat. p. 2078.*

The proofs show that a notice was, in accordance with the statute, filed against the fund remaining in the custody of the borough of Haddonfield by the complainants on the 17th day of April, 1902, with the proper officer of the borough, claiming the sum of $3,191.58 from the portion of the contract price due, or to grow due, to John Quinlan, who had contracted with the borough to construct a system of sewers and sewer disposal for a named price.

The borough of Haddonfield is a municipality of this state. The contract with Quinlan was made on the 8th day of September, 1901, and required that he should furnish both the work and material for the system of sewage and sewage disposal projected within that borough.

The defendant the City Trust Company, by a bond which accompanied Quinlan's contract, became surety for his faithful performance of it.

Quinlan shortly after entered upon the performance of his contract and continued (with a cessation of a few days in November, 1901), until the month of April, 1902, when he abandoned the work.

The eighteenth section of the borough's contract with Quinlan is in these words:

"In case of any unnecessary or inexcusable delay in the general conduct of the work, or in the event of an actual or practical abandonment of the work, the engineer will notify the contractor and the bondsmen in writing to that effect. If the contractor shall not within five consecutive days thereafter take such measures as will, in the judgment of the engineer, insure the satisfactory completion of the work in the time specified, or in a reasonable time thereafter if he has been permitted to continue beyond the time specified as provided elsewhere in this contract, the engineer may then, by and with the consent of the borough council of said borough, notify the aforesaid contractor to discontinue all work under this contract, and it is hereby agreed that the contractor is to immediately respect said notice and stop work. The engineer shall thereupon have the power to take such and as many persons as he may deem advisable, by contract or otherwise, to work at and complete the work herein described and to use such plant, horses, carts, tools and materials belonging to or leased by the contractor as he may find on the work and in the yards and storehouses of the contractor, or to procure by lease or purchase other materials, machinery or appliances for the completion of the same, and to charge the expense of said labor and materials, machinery and appliances to the aforesaid contractor, and the expense so charged shall be deducted and paid to the party of the first part out of any such moneys as may then be due to the said contractor under and by virtue of this agreement, or any part thereof; and in case such expense is less than the sum which would have been payable for such work under this contract, if the same had been completed by the party of the second part, the contractor shall be entitled to receive the difference. If the expense is greater, then the bondsmen will be called upon to make good the difference."

Pursuant to this clause, when Quinlan abandoned the further performance of the contract, the engineer for the borough gave the first notice by a letter, dated April 16th, 1902, to the bondsmen, the City Trust Company, that the work had been abandoned by Quinlan, and that if such measures as would

insure satisfactory completion of the work under the contract were not taken in five days the engineer would be obliged to notify the contractor and his surety to cease the work, and that the borough would complete it in accordance with the terms of the contract. Very shortly after this notice was given, the defendant the City Trust Company, the surety on Quinlan's bond (without waiting for or receiving any second notice to the effect that the borough would proceed to complete the work), made its arrangements.to proceed itself with the performance of Quinlan's contract. If the borough desired to exercise its privilege to have its engineer complete the work, the contract required that the borough council should consent and that the engineer should give a second notice to the contractor. that he discontinue all work under the contract. This was obviously necessary in order that there should be no confusion, which might arise if the contractor and the engineer were both working at the same time in completing the improvement.

This second notice (preliminary to the assumption of the completion of the contract work by the engineer) was not given. In fact the engineer never undertook to complete the residue of the work which the contractor had left unfinished. The defendant the City Trust Company, surety for Quinlan, acting for him and in his place, completed the performance of the contract work in accordance with his contract.

The City Trust Company claims that the work which it has done in finishing that which Quinlan had left undone was by virtue of a new agreement which it entered into with the borough of Haddonfield. No such agreement was made in writing, nor did the borough, by its council, or even by its executive officers, definitely agree at any time with the City Trust Company that it should complete the work. Desultory conversations between the representative of the City Trust Company and the officers of the borough, casually held at various times on the subject of the completion of the work, and the fact that the City Trust Company, acting for Quinlan, actually did it, are claimed to have amounted to a new contract between the borough and the City Trust Company.

Pierson *v.* Haddonfield.

It is explicitly denied by the borough officers that there ever was any such new or substituted contract. They testify that the defendant company proceeded with the performance of Quinlan's contract as his surety, and that no other agreement whatever was made between that company and the borough on the subject. The attending circumstances support the testimony of the borough officers. No definite terms of any such contract are proven. The defendant company in fact took the place of Quinlan, and in his stead performed his contract as his surety. It carried on the work in every detail as he had agreed to do, and accepted partial payments for work done at various stages in the completion of his contract at the prices agreed to be allowed him by orders or certificates drawn payable to John Quinlan, or bearer.

At the time when the contractor, Quinlan, in April, 1902, abandoned the contract, $2,115.01 was due and payable to him for work theretofore done by him under the contract. This portion of the fund was actually due to Quinlan when the complainant's lien notice was filed. In addition to the $2,115.01, there was another sum of $3,711.75 which had also been earned by Quinlan by work done under the contract. This was the twenty per cent. retained under section 25 of the contract, which, under section 26, became payable to the contractor within fifteen days after the engineer should have certified that the work had been finally completed on the part of the contractor. This is the portion of the fund which when the lien notice was filed was "to grow due" to Quinlan. The fifth section of the statute attaches the lien to "any funds which may be due or to grow due to said contractor" from the municipality under the contract. Both these portions of the contract price were earned by Quinlan, and both were, under the operation of the statute, attached by the filing of the complainant's lien claim. The whole work has now been completed on the part of the contractor, and the complainant's lien claim, which attached to both the money due and that to grow due, has now fully ripened, and is entitled to be paid by the borough.

By an agreement made between the borough and the City

Trust Company since the whole work has been completed and accepted, the sum of $5,000, part of the above total, has been retained to satisfy the lien claimants if they maintain their claims.

The borough asserts no interest in this money, and simply retains it until the court shall determimne who is rightfully entitled to it. The City Trust Company, the defendant who now claims this money, did not do the work or furnish the material by which it came to be owing. As above stated, this money was all earned by Quinlan, and would now be due and payable to him, save for the statutory liens filed against it.

The defendant company contends that the statute makes no provision for any lien in case of the abandonment of the contract.

The purpose and object of the statute is fairly indicated in its title. It is there declared to be an act to secure the payment of persons employed upon or furnishing materials *toward the performance* of any work on public improvements in the municipalities of this state. The first section also declares that any person doing any work or furnishing any material *"toward the performance* or completion" of any contract with a municipality for a public improvement shall have a lien. The right to a lien arises when the work or material is supplied towards the performance of the contract, not when it is completely finished. The second section, in terms, prescribes that the notice of claim may be filed at any time before the whole work to be performed is completed, or within fifteen days afterwards. The right to the lien is inchoate until perfected by the filing of the notice. It is true there can be no compulsion of payment until after the contract is completed, for until that has happened it cannot be known who all the respective lien claimants are, in order to adjudge their claims (section 8), or whether the municipality has any right to retain any part of the contract price to reimburse itself for any losses it may have suffered in completing the work. This necessary postponement of the ascertainment of the respective lien claimants, and of the payment of the portion of the contract price to which they may be en-

titled, does not prevent the claimant from perfecting his lien on such part of the contract price as may be either due or to grow due to the contractor, for by the express words of the statute (section 5) the lien attaches from the time of the filing of the lien notice, and obviously has effect whether the contractor is proceeding with performance of the contract or has abandoned it. The lien attaches not because of the act of the contractor in having finished the performance of his contract, but because of the act of the lien claimant in furnishing labor or material towards the performance of it and giving notice thereof as prescribed by the statute. The subject-matter of the lien is the fund due or to grow due to the contractor, which means not only what is due to the contractor at the time the lien notice is filed, but also what may thereafter come to be due to him.

The defendant the City Trust Company, surety for Quinlan on his contract, claims that it should be subrogated to the position and rights which the borough of Haddonfield might have acquired under the contract if it had notified the contractor to cease the work and had directed its engineer to complete the performance under section 18 of the contract. The section provides that if the contractor be noticed to quit all work, the borough engineer might seize the contractor's equipment and complete the contract work, charging the expenses against any moneys which might then be due to the contractor under the contract.

The defendant the City Trust Company contends that, having performed the contract according to its terms, it is entitled to apply this fund of $5,826.76 (earned by but unpaid to the defaulting contractor, Quinlan), to satisfy its losses incurred in the completion of the work, and that it is entitled to precedence over the lien creditors in the application of these funds admittedly earned by Quinlan on the contract work. The surety bond given by the City Trust Company contains a provision that if any liability should accrue on the part of the surety by reason of that obligation, after settlement of the same, the surety should be subrogated to the rights and remedies which the

borough would have against Quinlan on that obligation or against any other person.

The equitable principle of subrogation entitles a surety who performs the work upon which his principal has defaulted to have the benefit of the securities and remedies against his principal, which the other party to the contract may hold. If the other party never had any security or remedy against the principal, there is nothing to which the surety can be subrogated.

In the present case the complainant insists that the borough did not take the steps prescribed by the contract (section 18), by which its engineer might possess himself of the contractor's equipment and complete the work, charging the expenses to him and paying them out of any moneys due the contractor under the contract; that the borough never acquired the position which by section 18 of the contract might have enabled it to retain the moneys owing to Quinlan to reimburse it for the losses in completing the contract; that it has no remedy over against Quinlan or the moneys due him to which his surety can be subrogated.

The proofs clearly show that on Quinlan's abandonment of the work the borough engineer did not undertake to complete it, as prescribed by section 18; nor did the borough make a new contract with anyone else to complete the work. By the express terms of the contract, the right in the borough to retain and apply Quinlan's earnings (part of the contract price) was dependent upon the assumption of the completion of the contract work by the borough engineer, and the suffering by the borough of a loss. The selection, by section 18, of the borough engineer, who was necessarily familiar with the contract work and an expert in the conduct of such business, as the person who should complete the work in order to entitle the borough to reimburse itself from the moneys due the contractor, was an incident materially affecting the possible loss in finishing the work. The contractor might well say to the borough: "It was my right, if you expected to charge me with any loss in completing the contract work, to have had that work done under the superintendence of the expert agreed upon in the contract." In fact,

the borough engineer did not undertake the completion of that work, nor has the borough suffered any loss in that matter. The City Trust Company did not wait for this condition of affairs to come into being, but itself, acting for Quinlan, voluntarily completed the work. It may therefore be forcefully argued that the borough has no claim or remedy against Quinlan, or against the fund (part of the contract price) due or to grow due to him, to which Quinlan's surety can be subrogated.

It is also to be considered that the right of a surety to be subrogated is not an absolute one, which the surety may enforce at will. All the circumstances which might affect the equities of the parties should be presented. In the present case, while there is proof that the expenditures of the City Trust Company in completing the contract are in excess of the portion of the contract price paid to that company, it is not shown that this will necessarily result in an actual loss to the City Trust Company, for there is no proof that that company has no other fund or security from Quinlan to which it may have recourse. In the *Hewitt Case, 10 C. E. Gr. 210,* this court declared that whether the surety should have all the remedies which the creditor might have enforced depends on whether it is necessary to the protection of the surety that it should be so. The defendant company which undertook this suretyship knows whether it is otherwise protected. It is its duty (when it asks the court to award to it by subrogation a special fund of its principal on which other creditors rely for payment) to prove that it has no other recourse than this fund to save it from loss. No such evidence has been offered.

Whatever may be the equities of the parties touching the question of subrogation, the principles which in my view must control and determine their rights in this dispute are to be found in the effect and operation of the statute of 1892 above cited upon the matters here under consideration. The defendants' extensive citations of the decisions in other states upon their statutes are of little aid in determining this cause, which is controlled by the terms of the statute of this state.

The transaction was within the scope of that statute, a public

Pierson *v.* Haddonfield.

improvement being constructed by a municipality of this state under a contract for work to be done and materials to be furnished. The municipality, the contractor and his surety must be held to have made their contract with knowledge of the fact that this public statute gave to persons who might perform work for or furnish material to the contractor for such an improvement a right of lien upon moneys which might be due or grow due to the contractor under the contract, and that persons who supplied such work and material might rely upon that right of lien to secure payment of their claims. The City Trust Company having with this knowledge accepted its responsibilities as surety, cannot now equitably withstand the enforcement of the statutory lien subject to which it entered into its contract of suretyship. Any other construction of the statutory lien would make the statute a baited trap, inviting workmen and materialmen to give credits to contractors erecting public improvements upon the assurance that the payment of their claims would be secured, but depriving them of their security by the enforcement of a latent equity, to the creation of which they were not parties, and of which they knew nothing when they gave their credits, which in fact came into existence (if it ever did arise) because of circumstances happening long after the claimants' liens had attached.

I will advise a decree for the complainants and other lien claimants in both suits, in accordance with the views above expressed.