This is a suit under the Municipal Mechanics Lien act, arising out of a building contract made by the board of education *Page 336 
of the town of Montclair with the defendant Emmons company as general contractor. The contract price was $52,000; and extras to the amount of $495 were ordered and furnished, making the total amount due under the contract $53,528.50.
On January 13th, 1933, the contractor abandoned the contract; notice to proceed was given to the contractor and his surety, both of whom refused to complete; bids for completion were readvertised and contract for completion duly awarded at price of $18,485.
Of the $53,528.50 due or to grow due on the original contract, there had been paid to the original contractor (or its assignee), prior to the abandonment of the contract, $35,154.30. If all these payments were duly made by the board before the interest of any lien claimant attached, there remained in the hands of the board only $17,340.70, which is less than the cost of completion — and there would be nothing for any of the lien claimants.
The first issue is as to whether all of these payments made by the board were final and complete prior to the filing of any valid lien claim. The first lien claim was that of the Grinnell Company, filed November 18th, 1932. The next lien claim was not filed until after November 26th, 1932, on which latter date these payments by the board concededly became complete and final.
The fifth payment under the contract was certified by the architect at $7,051.60. The board on October 18th, duly approved this requisition and directed that warrant in payment be released. Two warrants were executed — one for $3,000, the other for $4,051.60. This was because there was no money on hand at that date to pay more than the $3,000. The $3,000 warrant was delivered to the contractor; the $4,051.60 warrant was not.
On November 15th, the board duly approved requisition for the sixth payment, in the sum of $4,547.50, and directed that the warrant in payment be released. There being still no money with which to make payment, this warrant was not at that time delivered to the contractor. Actual delivery to *Page 337 
the contractor (or his assignee) of both warrants — for $4,051.60 and $4,547.50 — was made on November 26th. In the meantime, the Grinnell lien claim had been filed on November 18th.
It is the contention of the board that the payments by it were final and complete as soon as it had voted approval of the requisition and directed release of the warrant; that by that action the funds represented by the warrant passed out of its hands and its control; and that thereafter mandamus would lie against the board's ministerial officer to compel the delivery of the warrant.
This contention is unsound. The statute gives to the laborers and materialmen on municipal public improvements the right of lien "upon the moneys in the control of said municipality due or to grow due under the contract." The lien attaches to those moneys, upon the filing of the statutory notice.
It is true that when the Grinnell Company claim was filed on November 18th, the board had already directed delivery of the two warrants (for $4,051.60 and $4,547.50), and it may be conceded that thereafter mandamus would lie at the suit of the contractor against the ministerial officer of the board, for failure by him to deliver the warrants, if no other right had intervened. But it seems clear that until the warrants were actually delivered, the moneys represented by them were still "in the control" of the board. The board had authorized and directed the officer to deliver the warrants, but he had not yet delivered them. Suppose that while he was on his way to deliver them they had become accidentally destroyed — could it seriously be contended that the funds represented thereby had passed out of the control of the board to the control of the payee; that the latter had thereby actually received payment?
The issue of the warrants was not complete until actual delivery. 2 Dill. Mun. Corp. (5th ed.) 1287. Until such actual delivery, it was obviously within the power of the board to pass a resolution rescinding the former resolution and revoking its direction to deliver. These moneys were therefore *Page 338 
still under the control of the board when the lien was filed; and there can be no doubt that under those circumstances no writ ofmandamus would be issued to compel the delivery of the warrants in derogation of the rights of the lien claimant. Ibid. 1315.
It is deemed therefore that the lien claim of the Grinnell Company (assuming it to be valid), attached to the $8,600 then due to the contractor, but still in the control of the board.
No liens attached to these moneys, however, in favor of any of the other lien claimants. None of their lien claims was filed until January 10th, and long before this the warrants had actually been delivered and these moneys were not in the control of the board.
It is claimed that the mechanics' liens attached to the sum of $5,861.62, being the amount of fifteen per cent. of the value of the work and materials already approved by the architect, prior to the contractor's abandonment of the contract, which fifteen per cent., under the terms of the contract, was to be retained by the board until after the completion of the contract; that this was money not "due" but "to grow due" under the contract.
It may be conceded that the lien claim attached to this sum — this retained fifteen per cent. — indeed it is so held inPierson v. Haddonfield, 66 N.J. Eq. 180; 57 Atl. Rep. 471
(decided under the statute of 1892, the terms of which are essentially the same as those of the present statute, in this regard). However, it by no means follows that such attachment gave the lien claimant any right therein superior to the rights of the board therein. Under the provisions of the contract this retained fifteen per cent. was to be retained by the board until a certain time after the completion of the contract, as security for the completion of the contract according to its terms. It was not the purpose of the statute to impair the rights of the municipality in this security. The legislative purpose was essentially to subrogate the laborers and materialmen who had acquired rights against the contractor (rights to payments from him), to the rights which the contractor had acquired against the municipality; *Page 339 
it was to give those laborers and materialmen the right and the power to see to it that the moneys which the municipality became obligated to pay to the contractor (or so much thereof as was necessary) should actually go to the payment of the work and materials which went into the building. But there is nothing expressed in, or to be implied from, the provisions of the statute which indicates any intent to give to the laborers or materialmen any rights against the municipality in or to any moneys to which the contractor never became entitled as against the municipality.
By the filing of the lien claim, the claimant acquired a lien upon the retained fifteen per cent. subject to the prior right of the municipality therein. If the contractor completed the contract properly so that the municipality had no further right to retain this fifteen per cent. nor to apply it to the proper completion of the contract, then the lien claimant's interest would become unconditional therein; but if the contractor failed to complete the contract, or did faulty work, or used faulty materials, the municipality would have the right to retain this percentage until the defects were made good, or the contract completed, or to apply it to such completion if the contractor refused to perform his contractual obligation — and that right is superior to the right of the lien claimant. The lien claimant has unconditional lien upon the moneys which have in fact grown due to the contractor; but as to the moneys "to grow due" he has only a lien subject to the rights of the municipality, until those moneys shall have actually grown due to the contractor.
The determination in Pierson v. Haddonfield, supra, does not hold otherwise; neither do any of the New York cases (our statute being taken from the New York statute) cited by the lien claimants. In the Pierson Case it was adjudged that the retained percentage was available to the lien claimants, but there the municipality claimed no rights therein: it was the surety for the contractor who claimed adversely to the lien claimants. The contractor abandoned the contract, but his surety fully performed in his stead, and then claimed the right to the retained percentage, denying the *Page 340 
rights of the lien claimants therein. The contract having been fully completed, the municipality, of course, had no further right to the retained percentage, and claimed none. The particular portion of the retained percentage in question in the suit represented work which had been done not by the surety but by the original contractor before his abandonment. It was held that the lien claimants had the right therein, as moneys due to the contractor from the municipality, superior to any right of the surety arising out of the liability of the contractor to the surety. The court there says (at p. 189): "It is true there can be no compulsion" (by the lien claimants) "of payment until after the contract is completed, for until that has happened, it cannot be known * * * whether the municipality has any right to retain any part of the contract price to reimburse itself for any losses it may have suffered in completing the work."
In the instant case, the municipality completed the contract (after the surety, as well as the contractor, had refused to complete), and in so doing was compelled to spend, and did spend, more than the balance of the contract price remaining unpaid to the contractor (including the retained percentage). It therefore applied the retained percentage to the completion of the contract, as it had the right to do, and thereby exhausted the retained percentage, so that none of it ever did grow actually due to the contractor; and none of it is available to the lien claimants.
The lien claims do attach, however, to the sum of $3,903.20, which was the amount certified by the architect, in and by his seventh certificate, as being due and owing to the contractor at the beginning of December. Payment of this amount was not directed by the board, but this was only for the reason that the Grinnell lien claim had been filed; the board on December 6th authorized the payment to be made, if, and when, the lien claim should be "withdrawn, released or bonded." This payment was never made to the contractor; the amount, therefore, was money due the contractor and in the control of the board at the time the subsequent liens were filed in January, and prior to the contractor's abandonment of the contract. *Page 341